# JAMES M. ADSIT

### *v.*

## HERMAN LIEB *et al.*

1. CONSTITUTIONAL LAW—*State Board of Equalization.* Under the constitutional provision which requires the value of property for taxation "to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise," the legislature is not prohibited from creating a State Board of Equalization, and investing it with power to equalize the assessments of the different counties for the purpose of producing uniformity in the valuation.

2. TAXATION—*relief from excessive valuation.* Where the State Board of Equalization increased the valuation of personal property in a county 68 per cent, whereby a party who had given in his moneys, which were assessed by the county assessors relatively too high, was required to pay on a valuation greatly in excess of its real value, it was *held*, that a court of equity could not relieve him, as he had his remedy before the board of review in his township, and also before the board of supervisors, and not having availed of it, he must bear the consequences.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was a bill in chancery, by James M. Adsit against Herman Lieb, county clerk, and P. M. Cleary, collector of Cook county, to enjoin the extension of taxes upon the moneys and funds of the complainant as a banker, upon the value thereof as equalized by the State Board of Equalization. The court below sustained a demurrer to, and dismissed the bill, from which order the complainant appealed.

Mr. EDWARD ROBY, for the appellant.

Mr. JAS. K. EDSALL, Attorney General, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant was a banker, doing business as such in the town of South Chicago, in Cook county. He was assessed by

the town assessor of that town, for the purpose of taxation, in the year 1873, for money on hand and money on deposit with other banks, etc., subject to draft, in the aggregate $47,300; and for fire and burglar proof safe, $250; making a total of $47,550. This assessment was neither increased nor diminished by the board of supervisors of the county, but the State Board of Equalization, in equalizing the assessments of the different counties of the State, added 68 per cent to the assessment of Cook county, and thereby increased the appellant's assessment from $47,550 to $79,884.

It is argued that the legislature having provided by law for the assessment of property by local assessors, had no authority, under the constitution, to create a State Board of Equalization, and invest it with power to change the values determined by the local assessors.

The part of the constitution which is supposed to relate to this question, is as follows: "The General Assembly shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property— such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise."

This is a substantial copy of so much of the constitution of 1848 as relates to this question.

A State Board of Equalization was created by an act approved March 8, 1867, invested with similar powers to those conferred upon that board by the act in force July 1, 1872. That act remained in force until it was superseded by the last named act.

In the case of *The People ex rel. etc.* v. *Salomon,* decided by this court at the January term, 1868, 46 Ill. 333, the principal question argued and decided was, the constitutionality of the act referred to, of March 8, 1867, and it was there held to be within the authority possessed by the legislature under the constitution.

When, therefore, the constitutional convention of 1870 re-adopted the language quoted, and made it a part of the constitution then adopted, it was known that all the departments of the State government held that it did not prohibit the legislature from creating a State Board of Equalization, and investing it with power to equalize the assessments of the different counties, for the purpose of producing uniformity in the valuations, and had it been intended that the legislature thereafter should not possess this power, it is impossible to believe that its exercise would not have been prohibited in unambiguous language. We have, in *Porter et al.* v. *The R. R. I. and St. L. R. R. Co., post ——*, held that it was competent to invest the Board of Equalization with authority to make original assessments of corporate property, and it is unnecessary to repeat what is there said with reference to the power possessed by the legislature in regard to the person or persons by whom assessments shall be made.

The wrong, if such it be, under which appellant suffers, results, as we must presume, from the fact that when his property was assessed by the local assessor, it was assessed relatively too high. There is no averment in the bill by which this presumption is excluded, and it is supported by the action of the Board of Equalization, which proceeded upon the hypothesis that the average valuation in that county was sixty-eight per cent too low.

The Board of Equalization possess no power to redress individual grievances, resulting from improper valuations ; their duty is confined to equalizing the general valuations. But by section 86, of the revenue act, in force July 1, 1872, it is provided : "In counties under township organization the assessor, clerk and supervisor of the town shall meet, on the fourth Monday of June, for the purpose of reviewing the assessment of property in such town. And on the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, they shall review the assessment, and correct the same, as

shall appear to them just.  No complaint that another is assessed too low shall be acted upon, until the person so assessed, or his agent, shall be notified of such complaint, if a resident of the county.   *   *   Property assessed after the fourth Monday of June shall be subject to complaint to the county board, subject to the rules specified in this section."

The county board is required, by section 97 of the same act, to meet on the second Monday of July, annually, after the return of the assessment books ; and, by the 2nd subdivision of the section, it is made its duty then, "on the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, to review the assessment and correct the same, as shall appear to be just," etc.

No effort appears to have been made by the appellant to have relief under these sections, and, having neglected to avail of the legal remedy thus provided him, he can not now have relief in a court of equity.   *City of Peoria* v. *Kidder*, 26 Ill. 357.   In that case it was said: "It is a rule of uniform application, that where a party has a complete remedy at law, and, having the opportunity, slumbers upon his right, and fails to insist upon it, a court of equity will not afford relief."

The objection that appellant had no notice of the meeting of the Board of Equalization or of its action, is untenable. The law is a public one, which prescribes the duties and designates the time of meeting of the board, and all citizens are bound to take notice of it.   The constitution imposes no obligation upon the legislature, requiring that such notice shall be provided for, or that an appeal shall be allowed from the action of the board.   *Porter et al.* v. *R. R. I. and St. L. R. R. Co. supra.*

Perceiving no error in the record, the decree of the court below is affirmed.

*Decree affirmed.*